IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

PETER LUEBKE,
individually, and on behalf of
all others similarly situated,

      Plaintiff,                        CASE NO. 17-cv-969

   v.

WISCONSIN ELECTRIC POWER COMPANY d/b/a
WE ENERGIES,

      Defendant.

## DECLARATION OF SUMMER H. MURSHID

I, Summer H. Murshid, certify under penalty of perjury that the following is true and correct to the best of my knowledge and recollection:

1. I am one of the Attorneys representing the Plaintiffs in this matter.

2. Following Defendant's Answer to the original Complaint, Plaintiff sent his first round of discovery and a Fed.R.Civ.P 30(b)(6) Deposition Notice.

3. Shortly thereafter, the Parties stipulated to conditional certification for the Collective Plant Electrician Class. (ECF No. 14.) The Court granted the Parties' stipulation on October 27, 2017. (ECF No. 15.)

Class Counsel sent out Notice to putative class members on November 7, 2018.

4. During the 45 day notice period, 22 Plant Electricians filed timely consent forms and affirmatively opted in to the case.

5. During this time, Defendant responded to Plaintiff's initial discovery requests and provided time and payroll records for Plant Electricians, as well as other responsive information. filed timely consent forms and affirmatively opted in to the case.

6. In early December 2017, Class Counsel and Defendant's Counsel conferred on whether the Parties would be amenable to discussing settlement.

7. The Parties stipulated to conditional certification of the newly added Collective Hourly Employee Class on February 25, 2018. (ECF No.35.) The Court granted the stipulation on February 26, 2018 (ECF No. 26), and Class Counsel sent notice to the putative Collective Class members on March 5, 2018.

8. During the 30 day notice period, 70 individuals filed timely consent forms and affirmatively opted in to the case.

9. Shortly thereafter, the Parties agreed to engage in mediation and jointly selected Deborah Huade of JAMS to mediate the case on a class and collective basis.

10. The Parties agreed in May 2018 to proceed to mediation, which was scheduled for September 27, 2018.

11. In order to engage in productive settlement discussions, the Parties conferred regarding the discovery needed to allow Class Counsel to adequately evaluate the claims of the collective class and putative Rule 23 classes' members.

12. Defendant had previously provided the time and payroll data for Collective Plant Electrician Class. During the months leading up to mediation, Defendant also provided the time and payroll for the Collective Hourly Employee Class.

13. Additionally, Defendant provided time and payroll data for the Rule 23 Plant Electrician Class and the Rule 23 Hourly Employee Class.

14. Upon receipt of the time and payroll data, Class Counsel was able to create a damages model to calculate the amounts owed to Collective and Class members within the relevant statutory periods.

15. The model allowed for different assumptions regarding the lengthz of mandatory pre-shift changeover/turnover requirements, the amount of liquidated damages and the amount of civil penalties.

16. Class Counsel shared the model with Defendant's Counsel on July 10, 2018.

17. Throughout August and September, the Parties worked to understand the opposing side's assumptions and refine the model accordingly in preparation for mediation.

18. In all, pursuant to requests from both the Mediator and Defendant's Counsel, Class Counsel created three seperate versions of the model, using a variety of different assumptions, and ran over forty different damages calculations.

19. The Parties also exchanged mediation statements in advance of mediation outlining their differing evaluations of the potential claims in light of the facts and law.

20. On September 27, 2018, the Parties engaged in a full day of mediation but were unable to reach a final resolution.

21. During the subsequent weeks, the Parties engaged in ongoing good-faith, arms-length settlement discussions and were able to reach a resolution in principal on October 15, 2018 to settle settle this matter on a class-wide basis for $4,200,000.00 inclusive of attorneys' fees and costs.

22. After notifying the Court that the Parties reached a settlement (ECF No. 57), the Parties worked diligently to reduce their agreement to writing and finalize the other necessary details for the settlement – including the language in the Notice of Class Action Settlement, finalizing a *pro rata* allocation of the settlement funds amongst the classes' members, and other documents necessary to memorialize their agreement.

23. This Agreement is fair and was reached at arm's length and in recognition of the risks faced by all Parties.

24. The settlement is structured to maximize payment to participating Class Members as there is no claims process to participate in the Rule 23 Classes' portion of the settlement.

25. The Agreement's terms outlined above are fair and reasonable for the Parties. Real disputes exist between the Parties as to whether liability exists in this case and, if liability were proven, the extent of the damages. Specifically, the Parties disagree on whether the time spent in mandatory pre-shift changeover/turnover meetings was compensable under the FLSA and/or applicable state and/or local law, the manner of determining the length of time spent performing pre-shift changeover/turnover requirements, Plaintiffs' ability to prove a willful violation of the FLSA, and the amount/extent of any award of liquidated damages and/or civil penalties due to the classes' members.

26. The claims are relatively small for each individual class member as they depend on each class members' length of employment, hours spent performing work for We Energies or WPS, and the amount of time spent engaged in pre-shift changeover/turnover meetings.

27. Under the Agreement, the average recovery per class member is $3,500.00 after deducting the service payments and consideration for attorneys' fees and costs.

28. This amount constitutes a substantial recovery in light of the type of claim, Class Counsel's evaluation of the classes' payroll and time records, and the risks of continued litigation.

29. Despite the Parties' divergent views regarding the Plaintiff's assertions in his Complaint, they were able to work toward a compromise in this matter and negotiate at arm's length to resolve the claims of Plaintiff and putative class members.

30. The Parties engaged in a full day of mediation and as well as extensive discussions in the weeks and months leading up to mediation.

31. Even after mediation session ended, the Parties continued to engage arms' length discussions to identify and various terms and conditions of the settlement.

32. As stated above, the average recovery is $3,500.00 after attorneys' fees, costs, and service payments.

33. This is a substantial recovery in light of the type of claim and a fair amount given the risks in the case, including the risk that Plaintiff and putative class members would receive nothing at trial.

34. The settlement allocation has been calculated in the most precise manner possible.

35. Starting with Defendant's records of the Plaintiff's and the classes' member's hours worked during the relevant statutory period, Class Counsel was able to determine how many hours were worked per workweek,

per person. Using 10 minutes as the amount of time spent each work day engaged in pre-shift changeover/turnover requirements by each Collective and Class member, Class Counsel was able to determine on a workweek by workweek basis, the amount of overtime, if any, that should have been paid had Defendant provided compensation for the time spent enganged in mandatory pre-shift turnover/changeover meetings or performing other pre-shift changeover/turnover tasks.

36. Liquidated damages and civil penalties were also factored in according to whether a particular workweek fell within the FLSA's potential three-year statutory period or within Wisconsin law's two-year period. Each individual's total potential damages were tallied for the entire statutory period divided by projected total damages to determine that individual's pro-rata percentage of the potential damages. That percentage was multiplied by the portion of the net settlement funds to determine each person's *pro rata* portion of the settlement.

37. Each class member's *pro rata* portion was split between W2 wage and 1099 income as provided by the FLSA and Wisconsin state and/or local law.

38. The Agreement provides that Plaintiff Luebke will receive a service payment in recognition of his efforts as well as the benefit each class member derived from his individual efforts. (ECF No. 60-1, ¶ 22.) A service payment of $25,000.00 to Plaintiff Luebke is fair and reasonable given the

efforts undergone and risks assumed by Plaintiff Luebke in initiating litigation and securing a recovery on behalf of himself as well as on behalf of the nearly 800 individuals in the classes.

39. Plaintiff Luebke took the risk to initiate the lawsuit on the behalf of the Classes' Members and has consistently provided information to Class Counsel and represented the classes' interests over the year since the investigation and litigation was initiated.

40. Attorneys' fees and costs are recoverable under the FLSA and state wage and hour statutes at issue in this litigation. *See* 29 U.S.C. § 216(b); Wis. Stat. §109.03(6). Class Counsel accepted the case on a 1/3 contingency basis, exclusive of costs, bearing the entire risk in the event that there was no recovery resulting from either a failure of proof at trial, or Defendant's inability to satisfy a judgment.

41. When Class Counsel accepted this case, it was unknown whether this matter could be resolved early in the litigation, or if substantial motion practice and trial would be necessary.

42. Importantly, under the terms of the legal services agreement, Class Counsel would receive no payment for attorneys' fees or reimbursement for costs incurred if the litigation was unsuccessful

43. Despite this risk, Class Counsel has incurred considerable costs in expert fees and other costs as a result of their advocacy on behalf of the class.

44. Accordingly, Class Counsel seeks one-third of the total value of the settlement as compensation for its fees. (ECF No. 60-1.) The total value of the settlement is $4,200,000.00, and 33.33% of that amount is $1,400,000.00.

45. Class Counsel faced significant risks in this litigation, based upon the strength of the legal and factual defenses asserted by Defendant as well as the risks incident to obtaining satisfaction of any future judgment.

46. Plaintiff must also be a member of the class he or she represents. The members of the Rule 23 Class are definite. The Parties have identified these individuals, have produced discovery and payroll records regarding them, and have calculated their potential damages. The Rule 23 Class definition does not include any subjective criteria. The Rule 23 Classes include hourly employees and Plant Electricans who were subject to pre-shift changeover/turnover requirements during a specific period of time. Plaintiff is a member of the classes he represents, is a former employee of Defendant, and was subject to the pay practices at issue in the Complaint. Based on information provided by Defendant, there are approximately 800 members of the Rule 23 Class.

47. Hawks Quindel, S.C. seeks to represent the Rule 23 Class. Hawks Quindel, S.C., has served as class counsel in over one-hundred similar wage and hour disputes in front of this Court, as well as the Western District of Wisconsin, and is experienced in handling complex wage and hour class actions

48. Neither Plaintiff nor Defendant are aware of any other pending litigation regarding this controversy.

49. Attached to this Declaration are true and correct copies of the following:

    a. *Berger v. Xerox Corp. Ret. Income Guarantee Plan,* No. 00-584-DRH, 2004 U.S. Dist. LEXIS 1819, at *7 (S.D. Ill. Jan. 22, 2004);

    b. *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008);

    c. *Johannsen v. Argon Industries*, E.D. Wis. Case No. 2:15-cv-01080-JPS, ECF No. 70 (July 15, 2016);

    d. *Johannsen v. Lyall Manufacturing*, E.D. Wis. Case No. 2:15-cv-00897-DEJ, ECF Nos. 45, 45-1 (September 12, 2016);

    e. *Hernandez v. La Fuente Ltd.*, E.D. Wis. Case No. 2:13-cv-00366-RTR, ECF No. 102 (November 15, 2014);

    f. *McReynolds v. Merrill Lynch*, N.D. Ill. Case No. 1:05-cv-6583, ECF No. 616 (Dec. 6, 2013);

    g. *Pintor v. Fall River Group, Inc.,* 2:17-cv-865-PP, ECF No. 48 (October 1, 2018);

h. *Pintor v. Hypro, Inc.*, 2:17-cv-890-PP, ECF No. 53 (October 1, 2018);

i. *Rossman v. A.R.M. Corporation d/b/a/ Comfort Keepers, et al.*, 1:16-cv-00493-WCG, ECF No. 94 (December 15, 2017);

j. *Brandt v. WSB-Grafton, Inc., et al.*, 2:16-cv-01588-PP, ECF No. 83 (October 17, 2017);

k. *Thompson et al., v. Carma Laboratories*, 16-CV-00030-DEJ, ECF No. 31 (E.D. Wis. August 15, 2016);

l. *Hanson v. Helgesen Industries, Inc.*, 2:15-cv-00878-DEJ (E.D. Wis. September 14, 2016), ECF No. 112;

m. *Webb et al., v. Midwestern Wheels Inc., et al.*, 15-CV-1538, ECF No. 42 (W.D. Wis. July 5, 2016);

n. *Ordonez v. Pop Manufacturing, Inc., et al.*, 15-CV-823-JPS, ECF Nos. 32, 34 (E.D. Wis. October 30, 2015);

o. *Nordgren, Evan v. Epic Systems Corp.*, 3:13-CV-00840-BBC, ECF No. 88 (W.D. Wis. March 20, 2015);

p. *Trujillo et al., v. Saelens' Corp.*, 13-CV-1096-JPS, ECF No. 25, 39 (E.D. Wis. May 15, 2014);

q. *Beierle et al., v. BR Metal Technology*, 13-CV-01280-CNC, ECF No. 28, 40 (E.D. Wis. June 26, 2014);

r. *Williams v. Cargill*, 2:09-cv-01006-LA, ECF No. 81 (E.D. Wis. Mar. 23, 2014);

s. *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, 11-CV-592-WMC, ECF No. 150 (W.D. Wis. Oct. 23, 2013);

t. *Denk v. Pine Ridge Assisted Living et al.*, 3:11-cv-00210-WMC, ECF No. 81 (W.D. Wis. Aug. 7, 2012).

Dated this 2nd day of November, 2018

                                            s/ Summer H. Murshid
                                             Summer H. Murshid