## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

PETER LUEBKE,
individually, and on behalf of
all others similarly situated,

      Plaintiff,             CASE NO. 17-cv-969-WED

    v.

WISCONSIN ELECTRIC POWER COMPANY d/b/a
WE ENERGIES,

      Defendant.

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

**HAWKS QUINDEL, S.C.**
Larry A. Johnson, SBN 1056619
ljohnson@hq-law.com
Timothy P. Maynard, SBN 1080953
tmaynard@hq-law.com
Summer H. Murshid, SBN 1075404
smurshid@hq-law.com
www.hq-law.com

Class Counsel

## Introduction

This is a hybrid collective and class action alleging wage and hour violations of state and federal law by Defendant Wisconsin Electric Power Company ("We Energies") brought pursuant to Section 216(b) of the Fair Labor Standards Act of 1938, as amended ("FLSA") and Fed. R. Civ. P. 23. (ECF Nos. 1, 11.) Plaintiff Peter Luebke ("Plaintiff"), on behalf of himself and the Collective Action Members, the Rule 23 Plant Electrician Class Members, and the Rule 23 Hourly Employee Class Members (collectively "Class Members"), reached a settlement of Plaintiff's claims on a class-wide basis with We Energies following a mediation session on September 27, 2018.

Pursuant to the Court's Order Granting Preliminary Approval of Settlement (ECF No. 66), Plaintiff now respectfully requests the Court grant his Motion for an Award of Attorneys' Fees and Costs. The Amended Settlement Agreement provides for a total Settlement Fund of $4,236,231.10, attorneys' fees of $1,412,077.00 which is 33.33% of the common fund, and $6,387.39 in costs. (ECF No. 68-1.) Class Counsel accepted this case on a contingent basis, agreeing to receive as fees 33.33% of any recovery. In doing so, Class Counsel agreed to take on the risk of non-payment of fees in the event Plaintiff's claims were unsuccessful. Class Counsel also took on the risks associated with non-payment in agreeing to cover the costs associated with litigation in this matter.

Class Counsel has engaged in litigation since the filing of this action on July 14, 2017. (ECF No. 1.) In doing so, Class Counsel obtained and engaged in a

substantial review of We Energies payroll data, engaged in settlement discussions, and communicated with a substantial number of class members regarding the settlement notice. Through this settlement, 793 Class Members will receive an average payment of $3,568.53. There has been no objection to Class Counsel's requested fee, nor have any individuals excluded themselves from the settlement.

Plaintiff respectfully requests the Court grant Plaintiff's request for the award of attorneys' fees in the amount of $1,412,077.00 (33.33% of the common fund) and costs in the amount of $6,387.39. A contingency fee of 33.33% is consistent with the percentage permitted in other common-fund settlements and the market rate for this geographic area, and recognizes the risk assumed by Class Counsel in litigating this matter as well as the result achieved on behalf of the Class Members.

### **Relevant facts**

## I.    **Procedural history.**

Plaintiff filed his Class and Collective Action Complaint against Wisconsin We Energies on July 14, 2017 on behalf of Plant Electricians. (ECF No. 1.) Plaintiff alleged that We Energies failed to pay him and other Plant Electricians for mandatory pre-shift changeover/turnover. (ECF No. 1.) Following We Energies' Answer to the Complaint, Plaintiff sent his first round of discovery and a Fed.R.Civ.P 30(b)(6) Deposition Notice. (Declaration of Attorney Larry A. Johnson ("Johnson Decl."), ECF No. 71, ¶ 2.) Shortly thereafter, the Parties stipulated to conditional certification for the Collective Plant Electrician Class. (ECF No. 14.) The Court granted the Parties' stipulation on October 27, 2017. (ECF No. 15.) Class

Counsel sent out Notice to putative class members on November 7, 2018. (Johnson Decl., ECF No. 71, ¶ 3.) During the 45-day notice period, 22 Plant Electricians filed timely consent forms and affirmatively joined the case. (Johnson Decl., ECF No. 71, ¶ 4.) During the notice period, We Energies responded to Plaintiff's initial discovery requests and provided time and payroll records for Plant Electricians, as well as other responsive information. (Johnson Decl., ECF No. 71, ¶ 5.)

In early December 2017, Class Counsel and We Energies' Counsel conferred on whether the Parties would be amenable to discussing settlement. (Johnson Decl., ECF No. 71, ¶ 6.) To facilitate the potential settlement of all claims arising out of the same changeover/turnover policy and practice, Plaintiff filed an Amended Complaint on January 29, 2018 to add a class of Hourly Employees subject to mandatory pre-shift changeover/turnover requirements. (ECF No. 32.) We Energies responded and denied Plaintiff's allegations. (ECF Nos. 34.)

The Parties stipulated to conditional certification of the newly added Collective Hourly Employee Class on February 25, 2018. (ECF No.35.) The Court granted the stipulation on February 26, 2018 (ECF No. 26), and Class Counsel sent notice to the putative Collective Class members on March 5, 2018. (Johnson Decl., ECF No. 71, ¶ 7.) During the second notice period, seventy individuals filed timely consent forms and affirmatively opted in to the case. (Johnson Decl., ECF No. 71, ¶ 7.) Shortly thereafter, the Parties agreed to engage in mediation and jointly selected Deborah Huade of JAMS to mediate the case on a class and collective basis. (Johnson Decl., ECF No. 71, ¶ 8.) While the Parties did not resolve the case during

mediation, they were able to reach an agreement on October 15, 2018. (Johnson Decl., ECF No. 71, ¶ 9.)

On October 19, 2018, the Parties notified the Court of their agreement and on November 2, 2018, they field their Joint Motion for Preliminary Approval of Class and Collective Action Settlement. (ECF Nos. 57, 60.) On November 8, 2018, the Court granted the Parties' Joint Motion (ECF No. 66) and Class Counsel mailed the approved notice to the Class on November 22, 2018. (Johnson Decl., ECF No. 71, ¶ 10.)

During the notice period, Class Counsel received numerous calls from Class Members and non-Class Members regarding the settlement. (ECF No. 67, ¶ 1.) Class Counsel and We Energies' Counsel worked collaboratively to determine that a sub-set of data was inadvertently omitted when produced to Class Counsel, which Class Counsel relied upon in determining potential damages. (ECF No. 67, ¶¶ 2-5.) We Energies produced additional data and the Parties agreed to fund an additional allocation of $12,416.74 from the Contingency and Ongoing Cost Fund, in addition to $36,231.10 in additional funds from We Energies. (ECF No. 67, ¶¶ 5-6.) The Parties requested the Court approve an amended settlement agreement and two revised notices. (ECF No. 67.) On December 28, 2018, the Court approved the amended settlement agreement (ECF No. 69) and on January 4, 2019 Class Counsel mailed notice to the twenty-seven members of the Rule 23 Classes. (Johnson Decl., ECF No. 71, ¶ 11.)

## II. Work performed by Class Counsel.

Class Counsel began investigating the claims at issue in this matter in January of 2017. (Johnson Decl., ECF No. 71, ¶ 12.) This investigation included speaking with multiple witnesses to confirm the existence of We Energies' class-wide compensation policies and practices that Plaintiff contends violated the FLSA and Wisconsin wage and hour laws. (Johnson Decl., ECF No. 71, ¶ 13.) After six months investigating the claims, Class Counsel filed Plaintiff's Complaint on July 14, 2017. (Johnson Decl., ECF No. 71, ¶ 14.)

In addition to the efforts described above, Class Counsel engaged in a substantial review and analysis of We Energies' payroll data in anticipation of mediation. (Johnson Decl., ECF No. 71, ¶ 15.) In order to engage in productive settlement discussions, the Parties conferred regarding the discovery needed to allow Class Counsel to adequately evaluate the claims of the collective class and putative Rule 23 classes' members. (Johnson Decl., ECF No. 71, ¶ 16.) We Energies had previously provided the time and payroll data for Collective Plant Electrician Class. (Johnson Decl., ECF No. 71, ¶ 17.) During the months leading up to mediation, We Energies also provided the time and payroll for the Collective Hourly Employee Class. (Johnson Decl., ECF No. 71, ¶ 18.) Additionally, We Energies provided time and payroll data for the Rule 23 Plant Electrician Class and the Rule 23 Hourly Employee Class. (Johnson Decl., ECF No. 71, ¶ 19.)

Upon receipt of the time and payroll data, Class Counsel was able to create a damages model to calculate the amounts owed to the Class Members within the relevant statutory periods. (Johnson Decl., ECF No. 71, ¶ 20.) The model allowed for

different assumptions regarding the lengths of mandatory pre-shift changeover/turnover meetings, the amount of liquidated damages, and the amount of civil penalties. (Johnson Decl., ECF No. 71, ¶ 21.) Class Counsel shared the model with We Energies' Counsel on July 10, 2018. (Johnson Decl., ECF No. 71, ¶ 22.) Throughout August and September, the Parties worked to understand the opposing side's assumptions and refine the model accordingly in preparation for mediation. (Johnson Decl., ECF No. 71, ¶ 23.) In all, pursuant to requests from both the Mediator and We Energies' Counsel, Class Counsel created three separate versions of the model, using a variety of different assumptions, and ran over forty different damages calculations. (Johnson Decl., ECF No. 71, ¶ 24.) The Parties also exchanged mediation statements in advance of mediation outlining their differing evaluations of the potential claims in light of the facts and law. (Johnson Decl., ECF No. 71, ¶ 25.)

On September 27, 2018, the Parties engaged in a full day of mediation but were unable to reach a final resolution. (Johnson Decl., ECF No. 71, ¶26.) During the subsequent weeks, the Parties engaged in ongoing good-faith, arms-length settlement discussions and were able to reach a resolution in principal on October 15, 2018 to settle this matter on a class-wide basis for $4,200,000.00, inclusive of attorneys' fees of 33.33% of the common fund, and costs. (Johnson Decl., ECF No. 71, ¶ 27.) After notifying the Court that the Parties reached a settlement (ECF No. 57), the Parties worked diligently to reduce their agreement to writing and finalize the other necessary details for the settlement – including the language in the Notice

of Class Action Settlement, finalizing a pro rata allocation of the settlement funds amongst the classes' members, and other documents necessary to memorialize their agreement. (Johnson Decl., ECF No. 71, ¶ 28.)

After obtaining preliminary approval of the settlement agreement, and during the notice period, Class Counsel fielded numerous calls from Class Members. (Johnson Decl., ECF No. 71, ¶ 29.) Class Counsel worked with We Energies' to identify sub-groups of data which were mistakenly omitted from We Energies production. (Johnson Decl., ECF No. 71, ¶ 30.) Once produced by We Energies, Class Counsel analyzed the additional payroll data and further negotiated with We Energies' Counsel regarding additional settlement funds. (Johnson Decl., ECF No. 71, ¶ 31.) After agreement, the Parties reduced their revised agreement to writing, notified the Court, and sent additional notices to the Class Members. (ECF No. 67.)

Class Counsel will continue to represent the interest of the Class Members at the fairness hearing and through final payment of the Settlement Funds, including fielding additional calls from Class Members, and other work necessary to ensure the Class Members recovery for their claims. (Johnson Decl., ECF No. 71, ¶ 32.) Accordingly, Class Counsel's Motion for an Award of Attorneys' Fees and Costs should be granted in its entirety.

## <u>Argument</u>

### I. Class Counsel's request for attorneys' fees and costs is consistent with the reasonable market rate given the risks of this litigation.

Courts have broad discretion to decide whether a requested fee is reasonable in a class action. 7B Alan Wright et al., *Federal Practice and Procedure: Federal*

*Rules of Civil Procedure*, § 1803.1 (3d ed. & 2008 Supp.). The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749 (1980). This is because "persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id*.; *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 977 (7th Cir. 2003) ("*Synthroid II*") (class members "must bear their portion of the legal expense.") In fact, "when a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows Plaintiff's attorneys to petition the court to recover its fees out of the fund." *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994). The court then determines the amount of attorneys' fees that plaintiff's counsel may recover from this fund. *Id.* The common fund doctrine is based on the notion that "all those who have benefitted from the litigation should share its costs.'" *Id.* (citation omitted).

Class Counsel's request for 33.33% of the common fund plus costs ($1,418,464.03) is in line with the market-rate and the Seventh Circuit's market-based approach in awarding attorneys' fees from a common fund.

###     A.     A market-based approach is used to calculate attorneys' fees in common fund cases in the Seventh Circuit.

The Seventh Circuit uses a "market-based approach" to set the percentage of the total settlement from the common fund to be awarded as reasonable attorneys' fees. Under this market-based approach, district courts "must do their best to award

Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*"). "The district court must try to assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) (*citing Synthroid I*, 264 F.3d at 718-19)). As the Seventh Circuit outlined in *Synthroid I*, which remains the standard in this Circuit for evaluating the propriety of common fund attorneys' fees requests, courts determining an appropriate percentage of the fund to award in attorneys' fees must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Synthroid I*, 264 F.3d at 718.

In applying this framework, "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992). The object of the district court's analysis "is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible." *Id.* at 572. Ultimately, "Class Counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *Id.* (noting that "in personal injury suits the usual range for contingent fees is between 33 and 50 percent. . . .").

Case 2:17-cv-00969-WED   Filed 01/22/19   Page 10 of 21   Document 74

In expressing its preference for assessing attorneys' fees as a percentage of the common fund, the Seventh Circuit explained that the client and/or the court need "not monitor how many hours the lawyers prudently devoted to the case [because the] client cares about the outcome alone." *Synthroid II*, 325 F.3d at 979. "[C]onsideration of a lodestar check is not an issue of required methodology" when determining an attorneys' fee award. *Williams*, 658 F.3d at 636 (rejecting the objectors' argument that the lodestar calculation should be used when assessing fees because "a pure percentage fee approach best replicated the market for ERISA class action attorneys."). "The question is not how risky the case looks when it is at an end but how the market would have assessed the risks at the outset." *Goodell v. Charter Communs.*, LLC, No. 08-cv-512-bbc, 2010 U.S. Dist. LEXIS 85010, at *4 (W.D. Wis. Aug. 17, 2010) (rejecting the defendant's argument that minimal work by class counsel on the matter, which settled early into litigation, should result in a reduction in the fee award). "The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *10 (S.D. Ill. Nov. 22, 2010). Again, the "client cares about the outcome alone" and class counsel's efficiency should not be used "to reduce class counsel's percentage of the fund that their work produced." *Synthroid II*, 325 F.3d at 980. The reasonableness of a fee award must be assessed in the context of "what it buys," and not focus on how "hard and efficiently [Class Counsel] say they worked." *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014).

The Seventh Circuit's market-based approach requires the court to examine fee contracts privately negotiated for similar litigation and the fees in similar cases. *Williams*, 658 F.3d at 635. In determining the market value of attorneys' fees, a district court must look to "actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Williams*, 658 F.3d at 635 (7th Cir. 2011) (citing *Taubenfeld*, 415 F.3d at 599). The market can be proven through "testimony or statistics concerning the fee arrangements in … litigation comparable to the present suit." *Cont'l Ill. Sec. Litig.*, 962 F.2d at 572.

Analysis of the Seventh Circuit's market-based factors here confirms the reasonableness of an award of attorneys' fees of 33.33% of the common fund. The 33.33% rate requested is consistent with rates of other lawyers in the community and with fee awards in similar class action cases. Moreover, the requested fee is appropriate given the risks associated with this case and the result achieved for the Class Members. Class Counsel's request for as award of attorneys' fees of 33.33% of the common fund, in light of the 33.33% market rate, is reasonable.

## 1. The requested fee award of 33.33% is consistent with the market rate.

The Seventh Circuit has stated that when "the prevailing method of compensating lawyers for similar services is the contingent-fee, then the contingent fee is the 'market' rate." *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("it is commonplace to award the lawyers for the class a percentage of the fund in recognition of the fact that most

suits for damages in this country are handled in the plaintiff's side on a contingent fee basis"); *McKinie v. JP Morgan Chase Bank, N.A.*, 678 F.Supp.2d 806, 814-15 (E.D. Wis. 2009) (noting that where a case would likely be handled on a class action contingency fee basis in the private market, awarding attorneys' fees as a percentage of the common fund is appropriate because it most closely replicates the market for the services required).

In determining an award of attorneys' fees, "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay him." *Assessment Techs. of WI, LLC v. Wire Data, Inc.*, 361 F.3d 434, 438 (7th Cir. 2004). That is, where a plaintiff agrees at arms' length to a 33.33% contingency fee, as Plaintiff did here, that agreement "defines the market." *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 908 (S.D. Ill. 2012). In this matter, Class Counsel seeks an award of attorneys' fees and costs that is consistent with what a willing client would agree to pay an attorney to take this type of case at the inception of the representation. Specifically, Class Counsel seeks an award of fees that represents 33.33% of the $4,236,231.10 common fund settlement, a total of $1,412,077.03. (Johnson Decl., ECF No. 71, ¶ 33.) This request is exactly what Plaintiff agreed to pay Class Counsel at the outset of representation when the outcome of this matter was still unknown. (Johnson Decl., ECF No. 71, ¶ 34.)

Further establishing that the market rate for this type of litigation is a contingency fee of 33.33%, plus costs, is that this is the same fee that Class Counsel agrees to represent other clients in class action wage and hour litigation throughout

Wisconsin. (Johnson Decl., ECF No. 71, ¶ 35.) Finally, the Declarations of Attorneys Brenda Lewison and James A. Walcheske provide further support that a contingent rate of 33.33% plus costs is the market rate for legal services in similar litigation in Wisconsin. (Declaration of James A. Walcheske, ECF No. 72, ¶¶ 9-10; Declaration of Brenda Lewison, ECF No. 73, ¶¶ 8-9.)

### 2. The requested fee award of 33.33% is consistent with other common fund awards in this district and within the Seventh Circuit.

A contingent rate of 33.33% falls within the normal percentage range of attorneys' fee awards approved by courts. *See* 4 William Rubenstein, Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 14:6, p. 558 (4th ed. 2002) (citing a 1996 Federal Judicial Center Study finding that fee awards in common fund class actions were between 20% and 40% of the gross monetary settlement). "[C]lass and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery." *Furman v. At Home Stores LLC*, No. 1:16-cv-08190, 2017 U.S. Dist. LEXIS 73816, at *10 (N.D. Ill. May 1, 2017) (holding that the market rate in the Northern District of Illinois is also 33.33%)

Both the United States District Courts for the Eastern and Western Districts of Wisconsin have held that a 33.33% contingency rate for attorneys' fees is reasonable in FLSA and Wisconsin wage and hour law hybrid actions. *See Meetz v. Wisconsin Hospitality Group LLC*, 1:16-cv-01313-WCG, ECF No. 194 (October 31, 2018) (approving a 33.33% contingency fee totaling $666,666 of a $2,000,000 common fund, plus $23,074.67 in costs); *Ehmann v. Pierce Mfg.*, 1:16-CV-00247-

WCG, ECF Nos. 143, 151 (May 31, 2017) (approving a 33.33% contingency fee totaling $1,700,000 of a $5,100,000 common fund, plus costs); *Bonnett v. Universal Metrics, Inc.*, No. 17-cv-1742-NJ, 2018 U.S. Dist. LEXIS 167760, at *2 (E.D. Wis. Sep. 28, 2018) (approving 33.33% contingency fee); *Pintor v. Hypro, Inc.*, 2018 U.S. Dist. LEXIS 168845, at *3 (E.D. Wis. Oct. 1, 2018) (same); *Pintor v. Fall River Grp., Inc*, No. 17-cv-865-pp, 2018 U.S. Dist. LEXIS 169477, at *2 (E.D. Wis. Oct. 1, 2018) (same); *Brandt v. WSB-Grafton, Inc.*, No. 16-cv-1588-pp, 2017 U.S. Dist. LEXIS 171155, at *2 (E.D. Wis. Oct. 17, 2017) (same); *Yu v. Millwood Inc.*, 2:17-cv-00324-NJ, ECF No. 66 (May 18, 2018) (same); *Demeuse v. Community Traffic Control LLC*, 2:16-cv-00651-PP, ECF No. 48 (January 11, 2018) (same); *Rossman v. A.R.M. Corporation d/b/a/ Comfort Keepers, et al.*, 1:16-cv-00493-WCG, ECF No. 94 (December 15, 2017) (same); *Thompson et al., v. Carma Laboratories*, 16-CV-00030-DEJ, ECF No. 31 (E.D. Wis. August 15, 2016) (same); *Johannsen v. Lyall Manufacturing WI, Inc.*, 2:15-cv-00897-DEJ ECF No. 45 (E.D. Wis. September 12, 2016) (same); *Johannsen et al., v. Argon Industries*, 15-CV-1080-JPS, ECF No. 70 (E.D. Wis. July 15, 2016) (same); *Hanson v. Helgesen Industries, Inc.*, 2:15-cv-00878-DEJ, ECF No. 112 (E.D. Wis. September 14, 2016) (same); *Webb et al., v. Midwestern Wheels Inc., et al.,* 15-CV-1538, ECF No. 42 (W.D. Wis. July 5, 2016) (same); *Ordonez v. Pop Manufacturing, Inc., et al.,* 15-CV-823-JPS, ECF Nos. 32, 34 (E.D. Wis. October 30, 2015) (same); *Nordgren, Evan v. Epic Systems Corp.*, 3:13-CV-00840-BBC, ECF No. 88 (W.D. Wis. March 20, 2015) (same); *Beierle et al., v. BR Metal Technology*, 13-CV-01280-CNC, ECF No. 28, 40 (E.D. Wis. June 26, 2014)

(same); *Williams v. Cargill*, 2:09-cv-01006-LA, ECF No. 81 (E.D. Wis. Mar. 23, 2014) (same); *Hernandez v. La Fuente Ltd.*, 13-CV-366-RTR, ECF No. 102 (E.D. Wis. Oct. 15, 2014) (same); *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, 11-CV-592-WMC, ECF No. 150 (W.D. Wis. Oct. 23, 2013) (same); *Denk v. Pine Ridge Assisted Living et al.*, 3:11-cv-00210-WMC, ECF No. 81 (W.D. Wis. Aug. 7, 2012) (same).

Based on the forgoing, the market rate in Wisconsin for similar class and collective wage and hour actions is a contingent fee of 33.33% of the common fund, plus costs. Class Counsel's petition for fees is both reasonable and within the rates charged within this market.

### 3. The requested fee award satisfies the *Redman* ratio.

In protecting from the collusive results of "clear sailing"[1] agreements, the Seventh Circuit instructs district courts to examine the ratio between 1) the requested attorneys' fee to 2) the requested attorneys' fee plus what the Class Members received. *Redman*, 768 F.3d at 630. The Seventh Circuit rejected a ratio that was, at best, 1 to 1.83,[2] or a 55% contingency. *Id.* (rejecting $1,000,000 in fees compared to $1,830,000 total common fund). The Seventh Circuit further questioned whether the full value of the $830,000 would make it to the class members. *Id.* Because some class members would not receive the value of the

---

[1] While the agreement before the Court does not include a clear sailing provision, Class Counsel does not anticipate We Energies will object to Plaintiff's request for fees. Therefore, the *Redman* ratio is still instructive.
[2] The Seventh Circuit calculated the ratio as $1,000,000 / ($1,000,000 + $830,000), the ratio of attorneys' fees to the sum of those fees plus the value to the class. *Id.*

settlement, resulting in a reversion to RadioShack, the ratio would be further diluted from what the court initially calculated. *Id.*

The ratio before the court in this matter is substantially fairer to the Class Members, as it is 1 to 3 ($1,412,077.00 / ($2,829,843.80[3] + $1,412,077.00), or 33%. The Seventh Circuit suggests that the "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014). No part of the settlement funds here will revert to We Energies, unlike the defendants in *Redman*. Further, there is no claims process for the settlement here – if approved, the full $2,829,843.80 will go straight out the door to the Class Members, and alternatively the *cy pres* recipient where undeliverable. Following the Seventh Circuit's guidance, Class Counsel has designed this settlement "in such a way as will maximize the settlement benefits actually received by the class, rather than to connive with the defendant in formulating claims-filing procedures that discourage filing and so reduce the benefit to the class. *Pearson*, 772 F.3d 781 (rejecting as outlandish a fee award of $1.3 million, where the class only actually received $865,284 because of the claims processes in place).

The attorneys' fees petitioned for here are at the low end of the *Redman* ratio – i.e. 33% of the total settlement fund, all of which will be distributed without

---

[3] The sum of the $25,000 Service Payment, $40,000 Contingency Fund, $36,231.10 Additional Settlement Fund, and the $2,728,612.70 Settlement Class and Collective Fund.

reversion. For this reason, the fees requested satisfy the concerns raised by the Seventh Circuit in both *Redman* and *Pearson*.

      **4.**    **The Settlement Fund represents an excellent recovery for the Class Members in the face of the risks presented by continued litigation of this matter.**

Other compelling factors support the relief requested in this petition. This case yielded a highly favorable result for Class Members providing an average recovery of $3,568.53 to the 793 Class Members. (Johnson Decl., ECF No. 71, ¶ 36.) Moreover, 115 Class Members will receive more than $5,000, 19 will receive more than $7,500, and 9 will receive more than $10,000. (Johnson Decl., ECF No. 71, ¶ 37.)

Importantly, this favorable result was achieved in the face of substantial risk. By definition, complex class-action litigation is a risky venture. *See White v. Sundstrand Corp.*, 256 F.3d 580, 586 (7th Cir. 2001) (stating that "…attorneys already supply risk-bearing services in class actions. They invest legal time on a contingent fee, taking the risk of failure in exchange for a premium award if the class prevails."). The Seventh Circuit has recognized "that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit." *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007). Because there were actual disputes with regard to both the facts and the law, Class Counsel "could have lost everything." *Cont'l Ill. Sec. Litig.*, 962 F.2d at 570. Specifically, the Parties dispute whether the turnover meetings were compensable under state and federal law, and if so, how much time was actually compensable. As Judge Posner has

observed, "the lawyers for the class receive no fee if the suit fails." *Cont'l Ill. Sec. Litig.*, 962 F.2d at 569. If Class Counsel is not compensated for the risk of accepting such litigation, "systematic undercompensation" can undermine the viability of worthwhile class actions. *Id*. By litigating this matter on a class-wide basis, Class Counsel engaged in litigation that is risky in any situation. *White*, 256 F.3d at 586 (stating that attorneys in class actions "invest legal time on contingent fee, taking the risk of failure in exchange for a premium award if the class prevails.").

Finally, despite the requested fee being disclosed to Class Members in the Notice, no Class Member has filed an objection to the settlement agreement, nor has any Class Member excluded him or herself from the settlement. (ECF No. 60-3; Johnson Decl., ECF No. 71, ¶ 38.) For these reasons, the requested fee award is appropriate in this matter.

## II.    Class Counsel's request for costs is reasonable.

Class Counsel petitions the Court for an award of $6,387.39 in actual costs, including the cost of a single future mailing that will be incurred through administering the settlement and distributing settlement payments. (Johnson Decl., ECF No. 71, ¶ 39.) An itemization of these costs is attached in support of this motion and shows generally costs incurred as follows:

- $400.00 – filing fee;

- $101.00 – service of process fee;

- $10.00 – witness skip trace fee;

- $352.01 – case management software;

- $44.62 – postage;

- $169.75 – photocopies;

- $1,124.01 – notice postage, copies, mailing expenses;

- $18.00 – parking;

- $18.00 – document courier expenses;

- $3,250.00 – mediation fees; and

- $900.00 – settlement administration postage, copies, mailing expenses.

(Johnson Decl., ECF No. 71-1, Ex. A, Itemization of Costs; Johnson Decl., ECF No. 71, ¶ 40.) While Class Counsel typically bills clients directly for these costs when clients are paying for legal services on a non-contingent basis, Class Counsel advances these costs in contingent representation in spite of the risk of non-recovery. (Johnson Decl., ECF No. 71, ¶ 41.)

In summary, Class Counsel was careful to incur costs in a manner that assisted in narrowing factual and legal issues throughout the litigation and ultimately allowed Class Counsel to evaluate the Class Members' claims and reach a fair and reasonable resolution in light of the continued risks of litigation, which ultimately benefits the Class Members. (Johnson Decl., ECF No. 71, ¶ 72.) Accordingly, the Court should award costs of $6,387.39 to Class Counsel in this matter.

## <u>Conclusion</u>

As set forth above, Class Counsel's requested award of attorneys' fees is consistent with the market rate charged by and awarded to other attorneys in the Eastern District of Wisconsin for similar matters, complies with the Seventh

Circuit's precedent for awarding attorneys' fees in such matters, and is reasonable in light of the risks assumed by Class Counsel in taking this matter on a contingent basis. Furthermore, Class Counsel's requested award of costs is reasonable given the contested nature of these claims. For these reasons, Class Counsel respectfully requests that this Court enter an appropriate order awarding Class Counsel $1,412,077.00 as a reasonable award of attorneys' fees and $6,387.39 in costs, for a total of $1,418,464.39.

Dated this 22nd day of January, 2019.

Respectfully submitted,

**_s/ Larry A. Johnson_**
Larry A. Johnson
Bar Number 1056619
Summer Murshid
Bar Number 1075404
Timothy Maynard
Bar Number 1080953

**Hawks Quindel, S.C.**
222 East Erie, Suite 210
P.O. Box 442
Milwaukee, WI 53201-0442
Telephone: 414-271-8650
Fax: 414-271-8442
E-mail: ljohnson@hq-law.com
smurshid@hq-law.com
tmaynard@hq-law.com

Class Counsel